2023-2174. Mr. Collin, if you are ready. Good morning, your honors. My name is Tom Collin and I have the pleasure of representing the Hellenic Air Force, commonly referred to as HAAF. Your honors, may it please the court. Your honors, the HAAF appeals. We're not going to give a HAAF argument. The Hellenic Air Force, your honor. We'll call it HAAF. Your Hellenic Air Force, your honor, seeks review and appeals the decision by the federal district courts which found that HAAF's complaint for breach of contract under a foreign military purchase agreement was untimely and thus divested the district court of any type. Claims court, I'm sorry. Claims court of subject matter jurisdiction. Your honor, the Hellenic Air Force takes exception to that based on the fact that we're not arguing that the contract wasn't closed more than six years before the filing of the complaint, right? Your honor, in answering that question with regards to the complaint, the word closed has two meanings in my opinion and I think that's where the confusion happened in this case. Closed means supply services complete. We did our part and you see some e-mails saying, now the HAAF doesn't agree with that at all, but at some point they're trying to say we closed. We got service supplies complete. We've done our work over here. Now the next step, which the government completed. I'm confused. In 2011, you filed a new SDR which recognized certificate for closure has been issued, right? It's been closed. That was more than six years before the filing. Your honor, I'm a little confused if you're talking about closure with regards to when the government told ROI that they were closing their case or when they were telling the Hellenic Air Force, as the court's aware, there's two different contracts going on in here. The HAAF has given money to the government and they signed a contract over there and then the government signs a contract with ROI. And so when they say close, I'm not sure when the government closed. It looked to me like there was a letter that the government was arguing in about 2009 where they're trying to tell the HAAF we've closed and there's a reference number and that may be where the court, there's different reference numbers in there. And it seems to me that that's what the letter is telling the Hellenic Air Force is that we've closed with Now we're going to work on your thing. So I'm a little confused on... Well, the issue is when the claim accrued, right? That's correct, your honor. It's a matter of contract law. Certainly is, your honor. And you knew before the six-year period that you weren't going to get the goods. Well, we knew we weren't going to get functionally working cameras if that's what the court is talking about. But then you now move into the reconciliation phase and they sit down and there's a complete, it makes it easier now because it all went online to the ESAM. And you can get the manual and you can see a whole appendix, a whole section on how you're supposed to properly... More than six years after your contract with the government was closed, right? If we had... Correct. If we knew what the fixed liability with regards to that... You knew about the closure of the contract with the U.S. government in 2011. You said it in this new SDR that you filed. You said that our contract with the government has been closed, right? With regards to close, I don't know what the court's referring to with regards to... It says the Certificate of Closure for the FMS case has been issued. That's a JA 87. And the closure is in relationships to what? To 2011? That what the court's reading there, is that in the closure to the recon optical or are they saying closure with regards to... The contract that you're now suing on had been closed. And your honor, again, with regards to that, and I don't want to play games or dance, there's a more than closed is saying we're not getting your supply services, we're not getting you your stuff. Now the next, and by the way, there's tons of inhibitors... It can't be closed if there are any outstanding claims, right? It cannot be closed if there's SDRs, and there's a lot of inhibitors, which you can tell from Major General... So once it's closed, you can't file any more SDRs, right? Unless you ask to reopen it, which you didn't do. With regards to the SDRs, that would be true also, but I don't see any evidence that the government has brought forward to show that the other SDRs that we had out there were resolved. I want the courts to know Greece, the Hellenic Air Force never got cameras. Title never passed. From day one, these cameras didn't work. They were overweight. You can claim from the General's letter that it was a form, fit, and function contract. The cameras have never worked. Title has never passed. That's a breach of contract issue though, right? Not a question of when did your claim prove. I'm confused on that question. Well, you're telling us about all these things that went wrong with respect to how certain obligations from other parties were never fulfilled under the contract terms. But all of those stories aren't relevant in terms of understanding when did the claims begin to accrue? Your breach of contract claims, when did it begin to accrue? And why didn't it accrue when the government in April 2011 transmitted that notice to you saying that your contract, the QBM contract, has been closed? Your Honor, that and that portion of that is just we're not giving you your articles. We're not going to give you the cameras. We're not going to work on it anymore. So the next step would be to reconcile. You come to these meetings, there's a whole thing on the way that the case is supposed to be resolved for case closure. And that's where the HALF, or the Hellenic Air Force, at that point they're waiting, when are we going to reconcile this? I guess your position is when the government tells you this contract is done and we're not looking at it ever again. In your view that's really more just an opening negotiation position where there's now going to be a round of negotiation that takes place before a claim actually accrues? Correct, Your Honor. At that point, and there's lots of other materials that they work with the government, other things. You can do excessive defense articles. You can do non-repayable loans. There's all these other programs that they work with. They sit down and because they promised that they would protect the HALF's interests, just as they would protect their own. So now they've got to come face a reckoning. When does the claim accrue in your view? When does the claim accrue? And what causes it to accrue? When Vice Admiral Rixey writes back to the HALF and says, listen, we're done talking to you. We're not talking to you anymore. It's not reopened. That's the phrase. Now they're not giving us credit for any of these line items. They're not doing anything. It's not when the contract is closed, it's when they stop talking to you? With regards to close, it's when we knew there's a, they Xcode that. Xcode is supply services and they put that on a portal. And then when it goes, now that's, in my understanding, that's the stuff, that's the articles. Code, when it goes F3, that says now we're completely closed. And that's when I believe, or that's when the claim should accrue is when, now they know they're not getting any money, any credit, anything from the United States government. That they've skipped, the United States government just bypasses completely the reconciliation process and gave somebody some authority to put that F3 or put that Xcode. Now the case, now when Bruce discovers that, writes to the government to say, listen, let's sit down and talk about this here. And they point out, I think it's Exhibit 1, Appendix 141, the general list, a plethora of mistakes that should have never even been service complete. But then he goes on to ask them, let's sit down and talk about this. They write back, you see the general, Rich, he says we're not going to reopen or revisit. They never opened or revisited in the first place with regards to those, to that reconciliation part for not protecting their interests. So that's where we believe the breach occurs, that we know we're not getting a refund, we're not getting anything at that point. With regard also, took exception also with regards to the accrual suspension. If the court were to find that somehow the breach occurred prior to 2013, the next step or the position of the Hath would be, look, we had meetings. First off, you skipped the entire regulatory proceedings on how to close the case. You just skipped it. You didn't do it, you oversaw it. The second thing is, is there's meetings that they're having in 2010 where you can see from that exhibit, with meetings that they're telling the Hath, hey, this is what, or the Hellenic Air Force, this is what you need to do. Submit these SDRs in 2010. You also see an exhibit from Master Sergeant Aspaya, I think I'm saying that right, where she's writing back in 2011 saying, look, this ain't right. You guys, these SDRs, you've got them wrong. And in fact, she says, are you even writing to the right person? Because this makes zero sense whatsoever. So we would believe that we have to use a reasonableness component on the accrual suspension. And though they did send a billing statement that was stacked and skipped the entire regulatory process, sent a billing statement that I don't think said F3 on there. It may have said X. We found it 887. Where at the top it says case status F3. And this is an attachment to the SDR. With regards... It does, Your Honor. Sure. And Your Honor, with regards to F3, they're not showing that on their, the half is not showing that on the script. They don't know that that's been entered into the system with regards to this F3 here. I'm not sure, Your Honor. Who filled out this form? The half did. I would believe so. Counsel, you're well into your rebuttal time. I assume you want to save it. The United States government told the government of Greece in writing, first in 2004 when the red team identified the issues with the cameras, and then again in 2008 that they were closing out the contract with Recon Optical and that they were terminating the one outstanding CLIN and returning that money to Greece at their request. A second time in 2008 that they were sending the LOA itself out for closure and to submit any supply discrepancy reports as soon as possible. Are you relying on those dates as when the claim accrues? I would think it's only when they announce the QBM contract is actually closed then the claim would accrue. I think it doesn't really matter because at the latest it would be in 2011 and that's also more than six years before the filing of the complaint. I think arguably it could have accrued for the cameras themselves as early as 2004. Certainly in terms of the question of whether or not the United States was going to go after Recon Optical, that would be in 2008 because that's when we notified them in writing that that contract was going to be closed. But I would say certainly at the latest, and this was also the comment made by the trial court judge, that whether it's those 2008 dates or as late as 2011, that is well before October 2013, which is the critical date in this case. I think the trial court did not pin down an exact accrual date, and I don't think this court has to either in order to affirm because the sort of universal plausible dates are all more than six years out from the filing of the complaint. And then in 2011, as the court noted, there was both the document from the United States to Greece, denoting that the QMB was in case closure, and then as discussed this morning, also a document from Greece to the United States identifying their understanding that the contract was closed. The trial court said as late as July 29, 2009, all the events that occurred would fix the alleged liability. That's correct, and we would agree with that. But I think later in the decision, he also goes on to say that in any event, whether it accrued in 2008 or as late as 2011, plaintiff's claim is untimely. So whichever of the universal dates, it would be before October 2013. If the court has no other questions, we would ask that the court affirm. We will allow you to surrender 12 minutes if you wish. Thank you. Mr. Collin has some rebuttal time. We'll give you two minutes. There isn't a lot to rebut, time-wise. Your Honor, with regard to rebuttal, I think the real issue comes down to when we fix liability is not only when the case, closure is a lot, we've got three closures that are going on, but the issue is when, it's been undisputed, at least the way I'm reading the briefs, that the government owed Greece a duty to protect their interests, and they would protect those just the same as they would go get their own. That's in the LOA, and you also see it in the SAMs and in the regulations. And I think the issue really comes down to when the United States said, we gave you our word that we were going to protect your interests, and we're not protecting your interests, we're giving you zero. And that's where the cause of action, that's where the fixed liability, that's when they knew that the United States was no longer, and I'll use paraphrase, having their back and going to protect their interests, is when the half chose that they needed to proceed with a judicial intervention. And we would ask this court, if there's no further questions, we'd ask this court to reverse the Court of Claims decision and also probably remand because there's still some other outstanding issues that weren't addressed by the court. Thank you for your time. It's been a pleasure.